**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

Ryan LaFave,

                               Plaintiff,

      v.                                  5:26-CV-391
                                         (ECC/MJK)

New York State Unified Court System *et. al.*,

                               Defendants.

---

Ryan LaFave, *Pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Elizabeth C. Coombe, U.S. District Judge:

### ORDER & REPORT-RECOMMENDATION

LaFave began this action on March 12, 2026, by filing a Complaint, and moving for leave to proceed *in forma pauperis* ("*IFP*") (Dkts. 1, 2). The Clerk sent LaFave's Complaint, *IFP* application, and motion to preserve evidence to this Court for review. (Dkts. 1, 2, 3).

### I.    BACKGROUND

LaFave "was involved in a family court proceeding" which ended in a "partial order of protection that did 'not preclude [LaFave] from being home.'" (Complaint, Dkt. 1, pg. 1, at ¶11, 13). Some time after this, LaFave returned to his "residence believing he was acting

1

consistently with the court's instruction." (*Id.* at ¶15). Once he returned, "law enforcement officers from the Onondaga County Sheriff's Office responded to the residence." (*Id.* at ¶16). The John Doe Officers informed LaFave that "he turned over a key" which "forfeited [his] residency" and that he "must leave the property until he obtained written documentation from a judge stating he could be present" at the residence. (*Id.* at ¶19). LaFave complied with the Officers' directive and left. (*Id.* at ¶21). Because of this, LaFave "lost access to personal belongings," his "legal records" and has been displaced from his home. (*Id.* at ¶23). LaFave, who was temporarily unhoused and relied on shelter for housing, has now moved to South Carolina. (*Id.* at ¶¶24-25).

LaFave now bring this action, suing under 42 U.S.C. § 1983, against the New York State Unified Court System, the Onondaga County Family Court, Onondaga County, and Sheriff Deputies John Does 1-5 ("Defendants"), alleging violations of the Americans with Disabilities Act ("ADA") and the Fourteenth Amendment's Due Process Clause. (*Id.* at ¶¶27-39).

## II.    IFP APPLICATION

LaFave declares in his *IFP* applications that he is unable to pay the filing fee. (Dkt. 2). And after reviewing his application, this Court finds that LaFave is financially eligible for *IFP* status.

## III.   STANDARD OF REVIEW

In addition to determining whether a plaintiff meets the financial criteria to proceed *IFP*, courts must also review the sufficiency of the allegations in the complaint under 28 U.S.C. § 1915. That statue requires a court to dismiss a case—at any time—if it determines that the action is (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

When determining whether an action is frivolous, courts must consider whether the complaint lacks an arguable basis in law or in fact. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and 28 U.S.C. § 1915. Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldredge*, 505 F.2d 802, 804 (8th Cir. 1974).

3

To be sure, courts have a duty to show liberality toward *pro se* litigants and must use extreme caution when *sua sponte* dismissing *pro se* complaints before adverse parties have been served and had an opportunity to respond. *See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee). But courts *still* have a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See id.*

## IV.   DISCUSSION

### LaFave's Complaint fails to allege a claim that survives initial review.

The District Court should dismiss LaFave's Complaint. Examining the Complaint, the Court recommends the District Court dismiss LaFave's Complaint because it (1) brings claims against immune parties and (2) fails to state a claim against the non-immune parties.

*Immune Parties.* The District Court should dismiss LaFave's claims against the arm of the state Defendants. "State governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or Congress has abrogated the states'

4

Eleventh Amendment immunity." *Williams v. Does*, 24-CV-4794, 2025 WL 713295 at *4 (S.D.N.Y. Jan 30, 2025) (cleaned up). This immunity extends to "state agents and state instrumentalities that are, effectively, arms of the state. *Id* at *5. For example, "the New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir. 2009). Likewise, the "Onondaga County Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment." *Miller v. Primo*, No. 23-CV-1051 (BKS/ML), 2023 WL 6379325, at *5 (N.D.N.Y. Sept. 29, 2023) (cleaned up). Yet here, LaFave seeks to sue the New York State Unified Court System and the Onondaga County Family Court. LaFave's action cannot survive because those Defendants are immune. As a result, the Court recommends the District Court dismiss LaFave's Complaint as to the New York State Unified Court System and the Onondaga County Family Court.

*Non-immune Parties.* The District Court should dismiss LaFave's Complaint as to the other Defendants (John Does 1-5 and Onondaga

County) because the Complaint fails to state a claim. Pleadings must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief …" Fed. R. Civ. P. 8(a)(2). "The purpose of" Rule 8 "is to give fair notice of the claim being asserted so" adverse parties have "the opportunity to file a responsive answer, prepare an adequate defense, and determine whether the doctrine of res judicata is applicable." *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (cleaned up). The rule also requires the pleading to include "a short and plain statement of the grounds for the court's jurisdiction" and "a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1), (3). "Although no technical form is required, the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct." *Cole v. Smrtic*, No. 1:24-CV-847, 2024 WL 4870495, at *2 (N.D.N.Y. 2024) (cleaned up). Allegations "so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order). But here, LaFave's allegations against the John Doe defendants are that they asked LaFave to leave his home because his being there violated the temporary restraining order. (Complaint, Dkt.

1, pg. 1, at ¶¶16-21). LaFave then alleges that he became displaced because of this. (*Id.* at ¶¶22, 24). Worse yet, LaFave's Complaint says nothing about the policy and practices Onondaga County created that lead to the alleged harm. *See generally*, (Complaint, Dkt. 1). While the Court does not doubt the hardship of LaFave's allegation, his Complaint fails to state a claim. *See, e.g., Lesson v. Jane Doe*, No. 1:25-CV-00188 (AMN/TWD), 2025 WL 1291533 (N.D.N.Y. May 5, 2025) (adopting Report and Recommendation which dismissed a plaintiff's excessive force claim because that plaintiff failed to "identify what force" was used against him or "how it was excessive.").

*Motion to preserve evidence.* The District Court should deny LaFave's motion to preserve evidence. "Parties to a lawsuit are duty bound to preserve relevant material, including electronically stored information ('ESI'), in anticipation of and during litigation under the Federal Rules of Civil Procedure. Therefore, an order from the Court directing a party to preserve evidence is not typically asked for or even needed." *Ok-Gu v. Distrokid, Inc., et al.*, No. 25-CV-9818, 2026 WL 621823, at *6 (S.D.N.Y. Mar. 4, 2026). But when a party does seek a preservation order they "must demonstrate that the evidence is in some

7

danger of being destroyed absent a court order." *Id.* He cannot meet this standard. LaFave's motion does not allege—let alone show—that the evidence is danger or being destroyed absent an order from the District Court. *See generally* (Mot. to Preserve. Dkt. 3). In other words, the District Court should deny LaFave's motion to preserve evidence.

*Amending the Complaint.* LaFave should be allowed to amend his Complaint. Generally, before courts dismiss a *pro se* complaint or any part of a Complaint *sua sponte*, they should afford the plaintiff the opportunity to amend at least once. *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). But leave to re-plead may be denied where any amendment would be futile. *See id.* Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). Here, the Court recommends dismissing LaFave's Complaint as to Defendants New York State Unified Court System and the Onondaga Family Court *without prejudice* and *without leave to amend* because any amendment would be futile. But the District Court should dismiss LaFave's other claims

*without prejudice* and *with leave to amend* because LaFave may be able to allege facts that state a claim.

## IV. CONCLUSION

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that LaFave's motion to proceed *IFP* (Dkt. 2) is **GRANTED**; and it is further

**RECOMMENDED,** that LaFave's Complaint as to the New York State Unified Court System and the Onondaga Family Court be **DISMISSED WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND** because those parties are immune; and it is further

**RECOMMENDED,** that LaFave's Complaint as to John Does 1-5 and Onondaga County be **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** because the Complaint fails to state a claim as to those parties; and it is further

**RECOMMENDED,** that LaFave's motion to preserve evidence be **DENIED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that if the District Court adopts this recommendation, LaFave be given thirty (30) days to amend his complaint to the extent authorized, and that plaintiff be advised that

9

any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERSEDE THE ORIGINAL**, and that LaFave must include all remaining facts and causes of action in the amended complaint. No facts or claims from the original complaint may be incorporated by reference, and it is

ORDERED, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on the *pro se* Plaintiff.

In accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 20, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

10

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,

v.

Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### REPORT-RECOMMENDATION & ORDER

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

### II. Initial Review

### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they

"suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at \*2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

(1) a short and plain statement of the grounds for the court's jurisdiction ...;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at \*2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack

Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983. See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

> **\*4** Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. \*\* This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

### C. Discussion [6]

#### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

#### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards,

No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at *7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at *7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge"[8] such claims would be barred by judicial immunity.

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " Id. (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." Id. (citation omitted); see Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " Id. (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official

capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7**  In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at \*5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

> Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at \*5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at \*5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

### III. Conclusion

**\*8**  It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

**All Citations**

Slip Copy, 2024 WL 4870495

---

**Footnotes**

1    The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

2    Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

3    Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

4    Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

5    Plaintiff did not provide any transcripts.

6    As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

7    The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a Heck dismissal. The undersigned has included the Heck review for sake of completeness.

8    Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by Rooker-Feldman, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by Younger. See Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), report and recommendation adopted, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the Rooker-Feldman doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); see also Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

9    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

10    The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

11    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1291533

2025 WL 1291533
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott LESSON, Plaintiff,

v.

Jane DOE / State Trooper, Defendant.

1:25-cv-00188 (AMN/TWD)
|
Signed May 5, 2025

**Attorneys and Law Firms**

SCOTT LESSON, Saratoga County Jail, 6010 County Farm Road, Ballston Spa, New York 12020, Plaintiff, pro se.

**ORDER**

Anne M. Nardacci, United States District Judge:

**I. INTRODUCTION**

**\*1** On February 10, 2025, *pro se* plaintiff Scott Lesson ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against an unknown New York State Trooper. Dkt. No. 1 ("Complaint"). Plaintiff sought and was granted leave to proceed *in forma pauperis*. Dkt. Nos. 4, 6.

This matter was referred to United States Magistrate Judge Thérèse Wiley Dancks, who reviewed the Complaint pursuant to 28 U.S.C. § 1915(e) and, on March 26, 2025, recommended that the Complaint be dismissed with leave to amend. Dkt. No. 6 ("Report-Recommendation"). Magistrate Judge Dancks advised that pursuant to 28 U.S.C. § 636(b)(1), the parties had fourteen days within which to file written objections and that failure to object to the Report-Recommendation within fourteen days would preclude appellate review. *Id.* at 7-8. [1] No party has filed objections to the Report-Recommendation and the time for filing objections has expired.

For the reasons set forth below, the Court adopts the Report-Recommendation in its entirety.

**II. STANDARD OF REVIEW**

This Court reviews *de novo* those portions of a magistrate judge's report-recommendation that have been properly preserved with a specific objection. 28 U.S.C. § 636(b)(1)(C). "To be 'specific,' the objection must, with particularity, 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012) (alteration in original) (quoting N.D.N.Y. Local Rule 72.1(c)). If no specific objections have been filed, this Court reviews a magistrate judge's report-recommendation for clear error. *See Petersen*, 2 F. Supp. 3d at 229 (citing Fed. R. Civ. P. 72(b) advisory committee's notes to 1983 addition). Similarly, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [previously] presented to the magistrate judge," the district court reviews a magistrate judge's report-recommendations for clear error. *O'Diah v. Mawhir*, No. 08-cv-322, 2011 WL 933846, at \*1 (N.D.N.Y. Mar. 16, 2011) (citations omitted); *accord Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) (a "statement, devoid of any reference to specific findings or recommendations to which [the plaintiff] objected and why, and unsupported by legal authority, was not sufficient to preserve" a claim); *Petersen*, 2 F. Supp. 3d at 228-29 & n.6 (collecting cases). "When performing such a 'clear error' review, 'the court need only satisfy itself

2025 WL 1291533

that there is no clear error on the face of the record in order to accept the recommendation.' " *Dezarea W. v. Comm'r of Soc. Sec.*, No. 21-cv-01138, 2023 WL 2552452, at *1 (N.D.N.Y. Mar. 17, 2023) (quoting *Canady v. Comm'r of Soc. Sec.*, No. 17-cv-0367, 2017 WL 5484663, at *1 n.1 (N.D.N.Y. Nov. 14, 2017)).

**\*2** "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (additional citations omitted). The Second Circuit has held that courts are obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). That said, "even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal ...." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920, at *2, (S.D.N.Y. Aug. 25, 2011) (citation omitted); *accord Caldwell v. Petros*, No. 22-cv-567, 2022 WL 16918287, at *1 (N.D.N.Y. Nov. 14, 2022). After appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. DISCUSSION

Because no party has filed any objections to the Report-Recommendation, the Court reviews the Report-Recommendation for clear error.

Magistrate Judge Dancks determined that Plaintiff's allegations failed to set forth a claim for excessive force, as Plaintiff did not identify what force the unidentified state trooper purportedly used against him, nor how it was excessive. Dkt. No. 6 at 5-6. Magistrate Judge Dancks also found that Plaintiff's allegations failed to comply with the pleading requirements set forth in the Federal Rules of Civil Procedure. *Id.* at 4-5. As a result, Magistrate Judge Dancks recommended that the Complaint be dismissed with leave to amend. *Id.* at 6-7. The Court agrees with Magistrate Judge Dancks' findings and recommendations for the reasons set forth in the Report-Recommendation. Having reviewed the Report-Recommendation for clear error, and found none, the Court adopts the Report-Recommendation in its entirety.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation, Dkt. No. 6, is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Complaint, Dkt. No. 1, is **DISMISSED with leave to amend**;[2] and the Court further

**ORDERS** that any amended complaint must be filed within **thirty (30) days** of the filing date of this Order; and the Court further

**ORDERS** that, if Plaintiffs file a timely amended complaint, it shall be referred to Magistrate Judge Dancks for review; and if Plaintiff fails to file a timely amended complaint, the Clerk is directed to close this case without further order of this Court; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on all parties in accordance with the Local Rules.[3]

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1291533

---

**Footnotes**

---

1      Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system, and not the documents' internal pagination.

2      As set forth in the Report-Recommendation, any amended pleading must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Dkt. No. 5 at 6–7.

3      The Clerk shall also provide Plaintiff, at both his address of record and the future address he provided, Dkt. No. 2, with copies of all unreported decisions herein.

---

**End of Document**                                   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 22 of 51

2023 WL 6379325
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Daishawn Lavon MILLER, doing business as Daishawn Lavon Miller Living Express Trust, Plaintiff,
v.
David PRIMO, Onondaga Family Court; Sarah G. Merrick, Title IV-D Agency; Patricia DeRue, Onondaga Family Court; Jeffrey Alan Domachowski, Onondaga Family Court; and Kelly Murphy, Director of Human Resources, Defendants.

5:23-CV-1051 (BKS/ML)
|
Signed September 29, 2023

**Attorneys and Law Firms**

DAISHAWN LAVON MILLER, Plaintiff, Pro Se, 2363 James Street, #547, Syracuse, New York 13206.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* ("IFP") (Dkt. No. 2), an Amended Complaint (Dkt. No. 6), and an amended IFP application (Dkt. No. 7) filed by Daishawn Lavon Miller ("Plaintiff") to the Court for review. For the reasons discussed below, I (1) deny Plaintiff's IFP application (Dkt. No. 2) as moot, (2) grant Plaintiff's amended IFP application (Dkt. No. 7), and (3) recommend that Plaintiff's Amended Complaint (Dkt. No. 6) be dismissed in its entirety without prejudice (a) in part with leave to amend, and (b) in part without leave to amend.

## I. BACKGROUND

On August 24, 2023, Plaintiff commenced this action by the filing of a *pro se* Complaint against Defendants David Primo, Sarah G Merrick, Patrick DeRue, and Jeffrey Alan Domachowski. (Dkt. No. 1.) On September 25, 2023, Plaintiff filed an Amended Complaint, as of right, which supersedes his original Complaint. (Dkt. No. 6); *Int'l Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."). Thus, presently before the undersigned for review pursuant to 28 U.S.C. § 1915, is Plaintiff's Amended Complaint. (Dkt. No. 6.)

Liberally construed, [1] Plaintiff's Amended Complaint—which is on a form complaint alleging violations of civil rights—asserts that his rights were violated by Defendants David Primo, Sarah G Merrick, Patrick DeRue, Jeffrey Alan Domachowski, and Kelly Murphy (collectively "Defendants"), who were all involved in Plaintiff's state court family proceeding. (*See generally* Dkt. No. 6.)

The Amended Complaint is difficult to decipher and fails to provide sufficient factual information for the Court to review or for Defendants to have notice of the claims against them. (*See generally* Dkt. No. 6.) From what the undersigned can glean, Plaintiff appears to allege that Defendants refuse to terminate Plaintiff's child support obligation. (*Id.*) As relief, Plaintiff requests that this court terminate the child support order, reimburse him for all amounts paid, and award him damages in the amount of three times what has been garnished from his wages. (Dkt. No. 6 at 7.)

Plaintiff also filed an application to proceed IFP and an amended IFP application. (Dkt. Nos. 2, 7.)

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 23 of 51

## II. PLAINTIFF'S APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[2] After reviewing Plaintiff's amended IFP application (Dkt. No. 7), the Court finds that Plaintiff meets this standard.[3] Therefore, Plaintiff's amended application to proceed IFP is granted.[4] In addition, Plaintiff's original application to proceed IFP is denied as moot. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*2** "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at \*1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense .... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV. ANALYSIS

**\*3** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Amended Complaint is largely incomprehensible and must be dismissed for three reasons.

### A. Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand for the relief sought[.]" *Id.* "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.* Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's Amended Complaint wholly fails to provide fair notice of the claims he attempts to assert. Given its lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claims against Defendants are entirely unclear.

### B. Failure to State a Claim Upon Which Relief May be Granted

**\*4** Second, and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed because it fails to state a claim upon which relief may be granted. [5]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

Here, the Amended Complaint includes the following allegations related to actions taken by Defendants, in full:

> David Primo, Jeffrey Alan Domachowski, Sarah Merrick, and Patricia DeRue are all in breach of trust for refusing appointment by me to settle the account and terminate the unconditional bill of attainer they are refusing due to the cooperative arrangement they have in order to provide Title IV-D services. The

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 25 of 51

form is child support and the substance is securities because child support is not in the best interest of the child or mother it's in the states best interest

(Dkt. No. 6 at 4.)

These allegations fail to allege the personal involvement of any of Defendants in a violation of Plaintiff's rights. [6]

### C. Immunity

**\*5** Third and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts claims against Defendants Primo, Merrick, Domachowski, and DeRue, because it seeks relief from individuals who are immune from suit.

### 1. Defendant Primo

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Plaintiff's Amended Complaint identifies Defendant Primo as "Chief Clerk of Onondaga County Family Court." (Dkt. No. 6 at 2.) Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL 1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

As a result, I recommend that Plaintiff's claims against Defendant Primo in his individual capacity be dismissed, because he is immune from suit. *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at \*9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at \*4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at \*2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia, Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at \*2 (E.D.N.Y. Sept. 10, 2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Primo in his official capacity as Chief Clerk of Onondaga Family Court be dismissed because the Onondaga County Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at \*4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 2. Defendant Merrick

Defendant Merrick, as the Commissioner of Social Services-Economic Security, is "not entitled to judicial immunity because her responsibilities are not closely associated with the judicial process nor is her agency a quasi-judicial body. However, she [is]

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Case 5:26-cv-00391-ECC-MJK   Document 5   Filed 03/20/26   Page 26 of 51

entitled to qualified immunity." *Parent v. New York*, 786 F. Supp. 2d 516, 537 (N.D.N.Y. 2011) (Hurd, J.), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *but see Ramos v. Putnam Family Court*, 15-CV-1443, 2017 WL 3083727, at *3 (D. Conn. July 18, 2017) (quoting *Lomtevas v. Cardozo*, 05-CV-2779, 2006 WL 229908, at *5 (D. Conn. Jan. 31, 2006)) (finding that "[o]fficials involved with ... the enforcement of [a] child support order are entitled to 'absolute quasi-judicial immunity.' "). Defendant Merrick's conduct in "enforcing the petition [ordering Plaintiff to pay child support] did not violate any clearly established right. There is no right to refuse to pay child support. Moreover, even if there was such a right and it was clearly established, it was objectively reasonable for [Defendant Merrick] to believe that carrying out her duties and enforcing the petition did not violate [P]laintiff's rights." *Parent*, 786 F. Supp. 2d at 537. As a result, I recommend that all claims against Defendant Merrick in her individual capacity be dismissed based on the doctrine of qualified immunity. *See also Chris H. v. New York*, 16-CV-6807, 2017 WL 2880848, at *9 (S.D.N.Y. July 5, 2017) (finding that the plaintiff's claims against the New York City Human Resources Administration/ Department of Social Services Commissioner were subject to dismissal pursuant to the doctrine of qualified immunity). [7]

### 3. Defendants DeRue and Domachowski

**\*6** Plaintiff's claims under § 1983 against Defendants DeRue and Domachowski, who acted as the support magistrate judges, are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature). However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendants DeRue and Domachowski. *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims that appear to arise from the efforts of Defendants DeRue and Domachowski, in their capacities as a New York Family Court Support Magistrates, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendants DeRue and Domachowski are therefore immune from suit under the doctrine of judicial immunity. As a result, I recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their individual capacities be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their official capacities be dismissed pursuant to the Eleventh Amendment. *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

## V. OPPORTUNITY TO AMEND

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 27 of 51

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [8]

**\*7** Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims against Defendants Primo, DeRue, and Domachowski.

Although I have serious doubts about whether Plaintiff can further amend the Amended Complaint to assert an actionable claim against Defendants Merrick and Murphy, given Plaintiff's *pro se* status and that Plaintiff has not had the benefit of the Court's analysis prior to amending, out of an abundance of caution, I recommend that Plaintiff's claims against Defendants Merrick and Murphy be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 7) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Merrick and Murphy in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Primo, DeRue, and Domachowski in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**\*8  NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6379325

---

**Footnotes**

| | |
|---|---|
| 1 | The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). |
| 2 | The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002). |
| 3 | The Court notes that Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility. Although Plaintiff's income appears to be above the federal poverty guidelines (Dkt. No. 7 at ¶ 2), based on his monthly expenses (*id.* at ¶ 6) and support contributions for his minor children (*id.* at ¶ 7), I find that he has established—albeit barely—that he is "unable" to pay the filing fee, or that paying the filing fee would pose a "serious hardship." |
| 4 | Plaintiff is reminded that, although his amended IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees. |
| 5 | Due to the nature of Plaintiff's Amended Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "[I]n the event the underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker-Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, 12-CV-4092, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying state family court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention |

Miller v. Primo, Not Reported in Fed. Supp. (2023)

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 29 of 51

doctrine. *Younger v. Harris,* 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

6     The Court notes that the Amended Complaint includes two pages with each Defendant listed as a heading and a bullet point list under each heading. (Dkt. No. 6 at 5-6.) These pages do not contain factual allegations and instead appear to include legalese phrases that largely do not make sense. By way of example, under the heading naming Defendant Primo, Plaintiff alleges:

- Breach of Agreement

- Securities fraud

- Trespass of my estate

- Neglect/failed to prevent

- Violation of the hierarchy of law

(Dkt. No. 6 at 5.) The list also includes a heading for Defendant Murphy. (Dkt. No. 6 at 6.) However, the Amended Complaint fails to allege factual allegations plausibly suggesting any action taken by Defendant Murphy and therefore fails to allege her personal involvement in any violations.

7     However, the undersigned notes that Plaintiff's claims against Defendant Merrick in her official capacity are not barred by the Eleventh Amendment. *Meyers v. Becker*, 23-CV-0173, 2023 WL 3079611, at *4 (N.D.N.Y. Apr. 5, 2023) (Hummel, M.J.), *report and recommendation adopted*, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023) (Hurd, J.). Notwithstanding that conclusion, I recommend that any claims against Defendant Merrick in her official capacity be dismissed because —in addition to the reasons set forth above—the Complaint fails to allege facts plausibly suggesting that Defendant Merrick's actions were pursuant to any policy or custom of Onondaga County. Official capacity suits are merely an alternative way to plead a claim against an entity of which an officer is an employee. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Graham,* 473 U.S. at 166 (quoting *Polk Cnty. v. Dodson,* 454 U.S. 312, 326 (1981)). In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom. *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004).

8     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

9     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                               © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 621823
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

PARK OK-GU, Plaintiff,

v.

DISTROKID, INC., et al., Defendants.

25-CV-9818 (VSB)
|
Filed 03/04/2026

**Attorneys and Law Firms**

Appearances:

Park Ok-gu, Seoul, Republic of Korea, Pro se Plaintiff

**OPINION & ORDER**

Vernon S. Broderick United States District Judge

**\*1** Before me is Park Ok-gu's ("Plaintiff") Emergency Motion for Temporary Restraining Order, Asset, Freeze, and Issuance of Third-Party Subpoenas, (Doc. 16 ("TRO Mot." or "TRO Motion")), Motion for Evidence Preservation and Discovery Order, (Doc. 23), and Motion for Alternative Service, (Doc. 24). Due to the deficiencies in the complaints and the TRO Motion discussed below, [1] Plaintiff's TRO Motion is DENIED without prejudice, and this action is DISMISSED without prejudice. Plaintiff's Motion for Evidence Preservation and Discovery Order and Motion for Alternative Service are also DENIED.

## I. **Factual Background & Procedural History**

On November 22, 2025, Plaintiff initiated this case against DistroKid, Inc. ("DistroKid"), YouTube LLC ("YouTube"), and Spotify USA Inc. ("Spotify"). (Doc. 1 ("Compl.").) The initial complaint was one paragraph and read, in its entirety: "This complaint alleges large-scale copyright infringement, unauthorized distribution, monetization, and evidence tampering involving plaintiff's original music works. Plaintiff created original tracks via Suno AI on 2024-07-30 and distributed through DistroKid. Unauthorized parties uploaded identical works before or after distribution, generating revenue. Platforms later removed content, confirming infringement patterns. Plaintiff seeks damages, injunctive relief, discovery, and Marshal service." (*Id.*)

On December 28, 2025, Plaintiff filed a two-page First Amended Complaint against PK Interactive LLC ("PK Interactive"), DistroKid, and John Does 1-50. (Doc. 5 ("FAC").) The FAC simply lists the residence of Plaintiff, PK Interactive, and DistoKid, noting that the two defendants are Delaware LLCs, DistroKid's registered agent is in Delaware, and PK Interactive LLC's registered agent is in Illinois. (*Id.* ¶¶ 2–3.)

On January 22, 2026, Plaintiff filed an emergency motion for a temporary restraining order seeking: (1) an "[i]mmediate asset freeze on all royalty accounts held by DistroKid and PK Interact[ive] related to Plaintiff's 2,000+ track catalog"; (2) the "[i]mmediate return of all YouTube Content ID rights from Defendants to Plaintiff"; and (3) the "[a]uthorization to serve subpoenas on Google (YouTube) and Spotify for uploader identity and payment records." (*See* TRO Mot. ¶ 1.) Plaintiff asserts that four of his original tracks were modified into seventeen unauthorized versions. [2] (*Id.* ¶ 2.) Plaintiff asserts that "[w]ithout

an immediate freeze, the Defendants—specifically PK Interact[ive] and its affiliates—will transfer the laundered royalties out of the Court's jurisdiction, leaving Plaintiff with no recourse." (*Id.* ¶ 4.)

**\*2** On February 2, 2026, I issued an order setting an initial telephonic conference for February 13, 2026 and advised that "[t]he parties shall be prepared to discuss the Fed. R. Civ. P. 65(b)(1), irreparable harm, venue, and personal jurisdiction." (Doc. 19.)

On February 4, 2026, Plaintiff filed a Second Amended Complaint against Philip Kaplan (CEO of DistroKid), DistroKid, and PK Interactive. (Doc. 20 ("SAC").) The SAC does not state the citizenship of Mr. Kaplan. The SAC also lists "Google (YouTube)" and "Spotify" as "Third-Party Platforms that host the infringing content distributed by the Defendants," but does not otherwise identify Google, YouTube, or Spotify as defendants, (*id.* ¶ 6), including in the caption.

On February 13, 2026, I held an initial telephonic conference to discuss several deficiencies in the complaints and TRO Motion. Plaintiff appeared pro se, along with an interpreter. Counsel for PK Interactive, Philip Kaplan, DistroKid, and Spotify [3] appeared as well and indicated that those defendants have not been served yet with the TRO Motion and complaints. During the initial telephonic conference, I noted that I would issue a written order regarding several deficiencies in the complaints and TRO Motion.

On February 18, 2026, Plaintiff filed an "EMERGENCY Motion for Evidence Preservation and Discovery Order," (Doc. 23), and a letter motion seeking leave to serve defendants through alternative means, (Doc. 24).

## II. Legal Standards

### A. *Rule 8(a)*

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," Plaintiff must nonetheless plead more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). Rule 8 reflects the principle that a pleading should "give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). A court has the authority to strike portions of the complaint that are redundant or immaterial, or in certain circumstances where "the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* A court may dismiss the complaint entirely on its own initiative. *Id.* "Failure to comply with Rule 8(a) may result in dismissal of a complaint, even if the pleader is proceeding pro se." *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir. 1995).

### B. *Motion for Alternative Service*

Federal Rule of Civil Procedure 4(e) governs service of an individual within the United States. Rule 4(e)(1) allows for service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." "In the State of New York, sections 308, 311, and 311-a of the New York Civil Practice Law and Rules ('CPLR') govern service of process on natural persons, corporations, and limited liability companies, respectively." *AP MA Funding LLC v. Caps Plantation LLC*, No. 25-CV-06934, 2025 WL 3638731, at \*2 (S.D.N.Y. Dec. 16, 2025).

**\*3** Service of process upon natural persons in New York is governed by CPLR § 308(1), (2), and (4), which requires service "by personal delivery, delivery and mailing, and nailing and mailing, respectively." *Shim v. Luxury Asset Cap., LLC*, No. 24-CV-09738, 2025 WL 3039958, at \*1 (S.D.N.Y. Oct. 31, 2025) (internal quotation marks omitted). It is only when these methods

of service are "impracticable" that a party may effectuate service through alternative means, including email, under CPLR § 308(5). *Id.* (internal quotation marks omitted).

Service of process upon a corporation in New York is governed by CPLR § 311(a), which permits service on "an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.' " CPLR § 311(a)(1). "If the foreign corporation is authorized to do business in New York, a plaintiff may alternatively effect service by delivering or electronically submitting the summons to the Secretary of State." *AP MA Funding LLC*, 2025 WL 3638731, at *2. "Like section 308(5), section 311(b) provides that a court may permit alternative service on a corporation if service via the statutorily defined methods is 'impracticable.' " *Id.* (citing CPLR § 311(b)).

Finally, service of process upon a limited liability company in New York is governed by CPLR § 311-a, which permits service by personally serving a member, manager, agent, or any other person designated by the limited liability company to receive process. CPLR § 311-a. "[T]he Limited Liability Company Law provides that authorized and nonauthorized foreign limited liability companies may be served via the Secretary of State, in accordance with procedures that mirror the requirements set forth above with respect to corporations." *AP MA Funding LLC*, 2025 WL 3638731, at *3 (citing N.Y. L.L.C. L. §§ 303–304). Like CPLR § 308(5) for natural persons and CPLR § 311(b) for corporations, § 311-a(b) provides that a court may permit alternative service on a limited liability company if service via the statutorily defined methods is "impracticable." *See* CPLR § 311-a(b).

"The meaning of 'impracticable' will depend upon the facts and circumstances of the particular case." *Ortiz v. Green Bull, Inc.*, No. 10-CV-3747, 2011 WL 5553834, at *2 (E.D.N.Y. Nov. 14, 2011) (internal quotation marks omitted). "Although the impracticability standard is not capable of easy definition, in general, a plaintiff must make some showing that the other prescribed methods of service could not be made." *Avail 1 LLC v. Kalsi*, No. 23-CV-1641, 2023 WL 7297214, at *2 (S.D.N.Y. Nov. 6, 2023) (internal quotation marks and citation omitted); *see also Silverman v. Sito Mktg. LLC*, No. 14-CV-3932, 2015 WL 13651281, at *4 (E.D.N.Y. Mar. 9, 2015) ("While ... it is not necessary to make a showing of due diligence or of actual prior attempts to serve a party under the other provisions of the statute ... the party moving for authorization to effect service by a method not prescribed by statute must make some showing that other prescribed methods of service could not be made." (internal quotation marks omitted)).

### C. *Temporary Restraining Order*

"The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962)). "A temporary restraining order 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Stringer v. Simon & Schuster, Inc.*, No. 25-CV-0670, 2025 WL 1916136, at *1 (S.D.N.Y. June 20, 2025) (quoting *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005)).

**\*4** "In the Second Circuit, the same legal standard governs the issuance of preliminary injunctions and temporary restraining orders." *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018). In order to obtain either a preliminary injunction or temporary restraining order, "a moving party must show four elements: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction [or TRO] is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by relief." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (summary order) (citing *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)). Of those factors, irreparable harm is the most important, for if there is no finding of irreparable harm, an injunction cannot issue. *See USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1294–95 (2d Cir. 1995). "To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted). "[I]f

a party fails to show irreparable harm, a court need not even address the remaining elements." *Coscarelli v. ESquared Hosp. LLC*, 364 F. Supp. 3d 207, 221 (S.D.N.Y. 2019).

### III. Discussion

### A. *Complaints*

### 1. Amending Complaint

Federal Rule of Civil Procedure 15(a)(1) provides that a plaintiff may amend its pleading once as a matter of course either (a) "21 days after serving it, or" (b) "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." In all other cases, Federal Rule Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave."

The FAC was amended before Plaintiff served any of the defendants, and the SAC was filed without the opposing party's consent or me granting leave, [4] as Fed. R. Civ. P. 15(a)(2) requires. Nonetheless, as I indicate below, given Plaintiff's pro se status, I will grant him leave to amend his complaint a third time. *See infra* Part IV.

### 2. Copyright Registration

To establish a claim for copyright infringement, "a plaintiff must allege both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 197 (2d Cir. 2018) (internal quotation marks omitted). "The registration of a plaintiff's copyright with the United States Copyright Office is not required for a work to obtain copyright protection. Nevertheless, preregistration or registration of a copyright with the United States Copyright Office is a precondition for bringing a copyright infringement action in federal court." *Brown v. Google*, No. 24-CV-7018, 2025 WL 2855341, at *5 (S.D.N.Y. Oct. 8, 2025) (citation omitted). The Copyright Act provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see also In re Indu Craft, Inc.*, 749 F.3d 107, 113 n.9 (2d Cir. 2014) ("[T]he Copyright Act's registration requirement ... serves as a precondition to filing a copyright infringement claim.") (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010) (noting that the Copyright Act "establishes a condition— copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the [Copyright] Act's remedial provisions")); *McKenzie v. Big Apple Training Inc.*, No. 22-CV-9554, 2023 WL 4866041, at *9 (S.D.N.Y. July 31, 2023) ("Absent exceptions not relevant here, '[b]efore pursuing an infringement claim in court,' a copyright claimant 'must comply with [17 U.S.C.] § 411(a)'s requirement that 'registration of the copyright claim has been made.' " (quoting *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) and 17 U.S.C. § 411(a))).

  **\*5**  Although Plaintiff attaches an exhibit to his TRO Motion which appears to identify his original tracks, (Doc. 16-1 at 1), "Plaintiff alleges nothing to suggest that he owns any copyright to his song[s] that [are] preregistered or registered with the United States Copyright Office. It is also unclear from Plaintiff's complaint[s] and [TRO Motion] whether [all] of the defendants allegedly infringed on any preregistered or registered copyright that Plaintiff may own, and, if so, how they did so." *Partridge v. Authentic Brands Grp., LLC*, No. 24-CV-8742, 2025 WL 3753935, at *3 (S.D.N.Y. Dec. 29, 2025). I therefore dismiss Plaintiff's claim of copyright infringement for failing to provide a short and plain statement of the claim under Rule 8. Nonetheless, given Plaintiff's pro se status, I will grant him leave to amend his complaint a third time. *See infra* Part IV.

### 3. Venue and Personal Jurisdiction

This action is also dismissed for lack of venue. None of Plaintiff's complaints sufficiently establish why venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b). The three locations where venue exists in a civil case are: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the judicial district where the person is domiciled, and any other "entity with the capacity to sue and be sued," if a defendant, resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(1), (2).

Plaintiff fails to adequately allege that venue is proper in this District. First, Plaintiff has not asserted that any defendant resides in the Southern District of New York. 28 U.S.C. § 1391(b)(1). The FAC states that DistroKid is a Delaware limited liability company with a registered agent in Delaware and PK Interactive is a Delaware limited liability company with an Illinois registered agent. (FAC ¶¶ 1–3.) Plaintiff requested the issuance of a summons for DistroKid, YouTube, and Spotify and listed three New York addresses: "DistroKid Inc., 401 Broadway Suite 1600, New York NY 10013 YouTube LLC, 1600 Amphitheatre Pkwy, Mountain View CA 94043 Spotify USA Inc., 45 W 18th St 7F, New York NY 10011." (Doc. 1-1.) However, Plaintiff does not specify where, for venue purposes, any of the defendants reside. 28 U.S.C. § 1391(b)(1).

Second, Plaintiff does not allege that "a substantial part of the events"—namely, the harms that defendants specifically inflicted on Plaintiff in infringing on any copyright—"giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2). Plaintiff asserts that "[v]enue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Defendants conduct substantial business within the Southern District of New York and the causes of action arose in part within this District." (SAC ¶ 2.) However, there are no allegations in any of the complaints or attached exhibits that any the defendants' allegedly infringing actions occurred in the Southern District of New York.

Third, Plaintiff does not even attempt to allege facts in his complaints that sufficiently demonstrate personal jurisdiction. *See* 28 U.S.C. § 1391(b)(3). Courts employ a two-step analysis in determining if personal jurisdiction exists. *Beskrone v. Berlin*, 656 F. Supp. 3d 496, 506 (S.D.N.Y. 2023). In the first step, there must be a statutory basis for asserting personal jurisdiction over each defendant based on a state's long-arm statute. *Id.* (citing 31 U.S.C. § 3732(a); *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015)). "In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York. If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (internal citation omitted). "Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York. In addition, a defendant may be subject to New York's long-arm statute, N.Y. C.P.L.R. § 302, if he engages in the following acts either in person or through an agent and such acts relate to an asserted claim: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act outside the state but injuries [sic] a person or property in the state; or (4) owns, uses, or possesses any real property in the state." *Kim v. Chung Sook Lee*, No. 18-CV-12230, 2019 WL 4688692, at *3 (S.D.N.Y. Sept. 24, 2019) (internal citation omitted). Although the FAC states that DistroKid is a Delaware limited liability company with a registered agent in Delaware and PK Interactive is a Delaware limited liability company with an Illinois registered agent, nothing in any of the complaints suggests that DistroKid or PK Interactive are subject to personal jurisdiction in this District, such as alleging that the defendants "are domiciled in New York or continuously and systematically do business in New York" or "are subject to New York's long-arm statute." *Id.*

**\*6** I therefore dismiss the action, but I grant Plaintiff leave to amend his complaint a third time. *See infra* Part IV.

### B. *Local Rule 7.1*

Plaintiff's TRO Motion, (Doc. 16), Motion for Evidence Preservation and Discovery Order, (Doc. 23), and Motion for Alternative Service (Doc. 24), fail to comply with Local Rule 7.1(a) which requires, among other things, (1) "[a] notice of motion, or an order to show cause signed by the court," (2) "[a] memorandum of law, setting forth the cases and other authorities relied on in support of the motion, and divided, under appropriate headings," and (3) "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." Loc. R. 7.1(a). The TRO Motion, Motion for Evidence Preservation and Discovery Order, and Motion for Alternative Service did not include a notice of motion, memorandum of law citing any cases, or a supporting affidavit. "A moving party's failure to comply with Local Rule 7.1 is sufficient grounds to deny a motion." *Anora v. Oasis Pro. Mgmt. Grp., Ltd.*, No. 19-CV-11732, 2023 WL 2307180, at *2 (S.D.N.Y. Mar. 1, 2023) (quoting *Anhui Konka Green Lighting Co., LTD. v. Green Logic LED Elec. Supply, Inc.*, No. 18-CV-12255, 2021 WL 621205, at *1 (S.D.N.Y. Feb. 17, 2021)).

Notwithstanding Plaintiff's failure to comply with Local Rule 7.1, I reviewed the TRO Motion, Motion for Evidence Preservation and Discovery Order, and Motion for Alternative Service thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff as a pro se litigant.

### C. *Motion for Evidence Preservation and Discovery Order*

Plaintiff filed a motion seeking an order that defendants preserve documents and disclose certain data and records. (*See* Doc. 23, Doc. 23-1.) "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "Parties to a lawsuit are duty bound to preserve relevant material, including electronically stored information ('ESI'), in anticipation of and during litigation under the Federal Rules of Civil Procedure. Therefore, an order from the Court directing a party to preserve evidence is not typically asked for or even needed." *Tyler v. Peterson*, No. 20-CV-06186, 2022 WL 11629009, at *3 (E.D.N.Y. Oct. 20, 2022) (internal citation omitted); *see also* Fed. R. Civ. P. 37(e). "Different courts have applied various standards in determining whether to enter a preservation order ... but, at a minimum, the party seeking a preservation order must demonstrate that the evidence is in some danger of being destroyed absent a court order." *Tyler*, 2022 WL 11629009, at *3 (internal quotation marks omitted).

Plaintiff states that the defendants have ignored his communications regarding alleged misappropriation since November 2025 "and critical evidence is now at risk of being permanently destroyed." (Doc. 23 at 1.) Plaintiff also asserts that the International Standard Recording Code, a standard code for identifying unique sound recordings, "associated with [his] works are no longer searchable in global databases" which "indicates that Defendants or the infringers have recently deleted or withdrawn the data to hide the fraud." (*Id.* at 2.) Further, Plaintiff asserts that "[b]ecause Defendants have ignored [his] emails for months while simultaneously allowing records to disappear, a Court order is urgently needed to secure the internal server logs and financial data before they are erased." (*Id.*) Plaintiff has offered nothing more than his belief that "data," "internal server logs[,] and financial data" are in danger of being destroyed because the defendants have not responded to his emails and International Standard Recording Code associated with his tracks are no longer searchable in global databases. (*See* Doc. 23.) Plaintiff has not presented any evidence that defendants did or will destroy evidence or that the evidence is otherwise at risk of destruction. *See Tyler*, 2022 WL 11629009, at *3 (denying a motion for a preservation order because the "Plaintiff has not made a proffer of evidence, apart from simply his belief that video footage will be deleted in order to 'protect the staff' at the facility, that the requested footage is in danger of being deleted"); *Hyers v. Martuscello*, No. 24-CV-00962, 2025 WL 406732, at *5 (N.D.N.Y. Feb. 5, 2025) (denying a motion for a preservation order because the plaintiff's counsel had "not made a sufficient showing that relevant evidence ... is in danger of being destroyed, and indeed proffered no proof in support apart from somewhat speculative assertions that [defendants] engaged in conduct ... that raises spoliation concerns"). Moreover, "Defendants have an affirmative obligation to ensure that any relevant evidence ... is not destroyed and that obligation exists independent of a preservation order."

*Micolo v. Fuller*, No. 15-CV-6374, 2016 WL 158591, at *1 (W.D.N.Y. Jan. 13, 2016). Defendants are likely aware that they are parties to a pending litigation because counsel from Ritholz Levy Fields LLP joined the February 13, 2026 telephonic conference and indicated that she represents PK Interactive, Philip Kaplan, DistroKid, and Spotify. "Indeed, anyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." *Tyler*, 2022 WL 11629009, at *3 (internal quotation marks omitted). Furthermore, I retain "the power to sanction parties that fail to preserve evidence related to litigation or the possibility of litigation," even in the absence of a preservation order. *Micolo*, 2016 WL 158591, at *2; *see also Yu Chen v. LW Rest., Inc.*, No. 10-CV-200, 2011 WL 3420433, at *8 (E.D.N.Y. Aug. 3, 2011) ("[C]ourts in this circuit have further held that even where no explicit discovery order has been issued, the court has the inherent power to preserve the integrity of judicial proceedings by, among other things, imposing sanctions for spoliation." (collecting cases)).

**\*7** Accordingly, Plaintiff's motion for a preservation order is DENIED.

### D. *Motion for Alternative Service*

Plaintiff filed a one-page letter motion seeking leave to serve defendants by alternative means, requesting that I allow him to serve defendants by email address or order that defendants' counsel, who appeared at the February 13 telephonic conference, file a notice of appearance on the docket. (*See* Doc. 24.) Plaintiff fails to make the requisite showing of impracticability to warrant leave for alternative service because Plaintiff does not demonstrate why the traditional methods of service could not be made; instead Plaintiff states that he is "currently living in Korea" and "[h]anding over documents to defendants in the United States in Korea is too difficult and expensive for an ordinary person like [him]," (*id.*). Plaintiff does not argue impracticability, and merely requests alternative service because he has "a lot of difficulties in going through legal proceedings on [his] own." (*Id.*) However, simply asserting that service is "difficult and expensive" is insufficient to meet the impracticability standard. Plaintiff has not detailed what steps he has taken to effect service pursuant to the prescribed methods or why such steps were impracticable. *See AP MA Funding LLC*, 2025 WL 3638731, at *3 (denying a motion for alternative service because "[n]owhere does Plaintiff offer a reason why the ordinary means of service are impracticable" or make a "showing that it conducted diligent searches for relevant addresses or that Defendants have been evading service"). Thus, Plaintiff's request to serve defendants through email fails.

### E. *Temporary Restraining Order*

#### 1. Irreparable Harm

Plaintiff's request for a temporary restraining order is denied for failure to show irreparable harm, which is defined as "injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Plaintiff's TRO Motion contains generalized references of irreparable harm because "[w]ithout an immediate freeze, the Defendants—specifically PK Interact[ive] and its affiliates—will transfer the laundered royalties out of the Court's jurisdiction, leaving Plaintiff with no recourse," (TRO Mot. 1), but Plaintiff does not explain why he believes that any of the defendants "will transfer the laundered royalties out of the Court's jurisdiction," or why that would "leav[e] Plaintiff with no recourse," (*id.*). Plaintiff fails to point to what kind of specific, actual irreparable harm he is suffering as a result of any of the defendants' alleged conduct, such as consumer confusion or loss of reputation and goodwill, to warrant a temporary restraining order. Moreover, beyond Plaintiff's conclusory statement, Plaintiff fails to explain why monetary damages would not suffice to remedy any alleged harm.

#### 2. Likelihood of Success on the Merits

Given the deficiencies discussed above, Plaintiff cannot demonstrate a likelihood of success on the merits. Where a party seeks to "alter, rather than maintain, the status quo," the movant "must show a 'clear' or 'substantial' likelihood of success." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (quoting *Tom Doherty Assoc., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). The complaints do not contain sufficient factual allegations to make this showing because Plaintiff has not adequately alleged that he satisfied the precondition of copyright preregistration or registration or how all of the defendants allegedly infringed any preregistered or registered copyrights that Plaintiff owns. *See supra* Part II.A.2.

### IV. Conclusion

**\*8** This action is DISMISSED for the reasons set forth above. However, in light of Plaintiff's pro se status, I am granting Plaintiff leave to amend the complaint for a third time within 30 days of this Opinion & Order. Plaintiff's third amended complaint must be titled "Third Amended Complaint"[5] and Plaintiff may replead his claim as stated above, including pleading facts related to his claim of copyright infringement by providing "facts showing that: (1) he owns a copyright for the work that is the basis for his federal law claims of copyright infringement; (2) the copyright is preregistered or registered with the United States Copyright Office," including identifying information or attaching documentation showing ownership of such registration; "and (3) the defendant[s] named in the [third] amended complaint infringed upon that copyright." *Partridge*, 2025 WL 3753935, at \*3. Plaintiff should also clarify why venue is proper in the Southern District of New York and whether I have personal jurisdiction over the defendants.

Plaintiff's Motion for Evidence Preservation and Discovery Order, (Doc. 23), is DENIED without prejudice.

Plaintiff's Motion for Alternative Service, (Doc. 24), is DENIED without prejudice. Plaintiff shall request the issuance of summonses for his Third Amended Complaint and serve defendants or file a letter on the docket updating me as to his efforts to do so and, if appropriate, request an extension of time to complete service. If Plaintiff wishes, he may also renew his request to serve defendants with the Third Amended Complaint by alternative means, provided that Plaintiff can make the requisite showing of diligence in his attempts to serve defendants or impracticability.

Plaintiff's TRO Motion, (Doc. 16), is DENIED without prejudice for the reasons stated above. Plaintiff may file a revised motion seeking a temporary restraining order, after filing a Third Amended Complaint, which should address the deficiencies described in this Opinion & Order and any other deficiencies Plaintiff notes. If Plaintiff files a revised motion seeking a temporary restraining order, that motion shall comply with Local Rule 7.1.

Plaintiff may wish to contact the legal clinic in this judicial district to receive limited-scope assistance, by completing a retainer and intake form to the City Bar Justice Center's Federal Pro Se Legal Assistance Project. Plaintiff may find more information online at https://nysd.uscourts.gov/attorney/legal-assistance and https://www.citybarjusticecenter.org/projects/federal-pro-se-legal-assistance-project/.

The Clerk of Court is respectfully directed to terminate Docs. 16, 23, and 24.

If Plaintiff does not file a Third Amended Complaint within the time allowed, I will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this Opinion & Order. I respectfully direct the Clerk of Court to hold this matter open on the docket until a judgment is entered.

SO ORDERED.

**All Citations**

Slip Copy, 2026 WL 621823

**Footnotes**

1   The deficiencies described in this Opinion & Order are merely exemplars and are not meant to be an exhaustive list. There may be other deficiencies in the TRO Motion and complaints that are not addressed in this Opinion & Order. Accordingly, Plaintiff should review any amended pleading and motion closely to ensure not only that it adequately addresses the problems addressed in this Opinion & Order but that they otherwise satisfy pleading and legal standards as to the claims asserted and relief sought.

2   Plaintiff does not identify the specific works that he claims to have been infringed in the initial complaint or the amended complaint. However, in the exhibits to his TRO Motion, Plaintiff appears to identify four original tracks. (*See* Doc. 16-1.)

3   Counsel from Ritholz Levy Fields LLP indicated on the February 13, 2026 telephonic conference that she represents PK Interactive, Philip Kaplan, DistroKid, and Spotify and was appearing for a limited purpose in light of my order at Doc. 19, but has not yet filed a notice of appearance on the docket.

4   "As a general rule, an amended complaint supersedes the original complaint. Once a plaintiff files an amended complaint, any prior complaints no longer serve any function in the case." *Felix v. Gotham Real Est. Corp.*, No. 12-CV-4559, 2012 WL 4563097, at *5 (E.D.N.Y. Oct. 2, 2012). "Each time Plaintiff filed an amended complaint, that complaint became the operative pleading, thereby superseding the claims asserted in the prior complaints." *Starke v. Fuentes*, No. 25-CV-3108, 2025 WL 1652123, at *4 (S.D.N.Y. May 8, 2025). Thus, if Plaintiff amends his complaint a third time, Plaintiff should include all defendants and causes of action against each defendant in the Third Amended Complaint.

5   "Many of the documents that Plaintiff has attached to his submissions are in Korean, and the Court is therefore unable to review them. Although this Court's local rules do not prohibit submission of pleadings in a foreign language, it is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English. Documents not in English must be accompanied by an English translation." *Kim*, 2019 WL 4688692, at *2 (internal quotation marks and citations omitted and alterations adopted). Accordingly, Plaintiff shall provide English translations for any documents that are not in English.

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1]**  **Civil Rights** 👈 Criminal prosecutions

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

50 Cases that cite this headnote

**[2]**  **Conspiracy** 👈 Civil rights conspiracies

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

395 Cases that cite this headnote

**\*103**  **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

## *SUMMARY ORDER*

**\*\*1** Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]** First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104** As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

 **2  [2]    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no **\*105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

**All Citations**

335 Fed.Appx. 102, 2009 WL 1762856

---

**End of Document**                                                 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 713295
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jomo WILLIAMS, Plaintiff,
v.
DOES, et al., Defendants.

CIVIL ACTION NO.: 24 Civ. 4794 (PAE) (SLC)
|
Signed January 30, 2025

**Attorneys and Law Firms**

Jomo Williams, New York, NY, Pro Se.

Miranda Onnen, Office of the New York State Attorney General, New York, NY, for Defendants.

## REPORT AND RECOMMENDATION

SARAH L. CAVE, United States Magistrate Judge.

**\*1  TO THE HONORABLE PAUL A. ENGELMAYER**, United States District Judge.

## I. INTRODUCTION

Pro se Plaintiff Jomo Williams asserts claims under 42 U.S.C. § 1983 alleging that Defendants Erlon Hodge and Theresa Daniel denied him access to the New York State courts in violation of his First and Fourteenth Amendment rights. (ECF Nos. 1; 18). Mr. Williams also names as a defendant BSREP UA 3333 Broadway LLC ("BSREP"), but it has neither been served nor otherwise appeared in this action. Hodge and Daniel move to dismiss the Complaint with prejudice. (ECF No. 37 (the "Motion")).

We respectfully recommend that: (i) the Motion be granted; (ii) BSREP be dismissed pursuant to Federal Rule of Civil Procedure 21; (iii) this action be dismissed with prejudice and without leave to amend; and (iv) that all other of Mr. Williams' pending requests be denied as moot.

## II. BACKGROUND

### A. Factual Background

In several hundred pages of filings, over two hundred of which consist of the Complaint (ECF No. 1) and the Amended Complaint (ECF No. 18 (together, the "Complaint")), [1] Mr. Williams complains of systemic discrimination and disadvantages based on race, socioeconomic status, and other characteristics. A federal case, however, is a limited affair not suitable for carte blanche grievance against the world and, as best we can discern from the Complaint, Mr. Williams filed this action to remedy the alleged denial of his right to access a New York State court. (ECF No. 1 at 2, 5–6, 8).

To set the scene, after Mr. Williams allegedly failed to pay rent on an apartment, he and BSREP became involved in adversarial housing proceedings in New York State courts (the "State Courts"). [2] (ECF No. 18 at 5–23 (the "Housing Matters")). [3] Mr.

Williams complained, among other things, that BSREP imposed or contributed to the allegedly improper living conditions he experienced because of his race and socioeconomic status. (Id.) Throughout the Complaint, Mr. Williams appended documents he submitted in the State Courts in the Housing Matters. (See generally ECF Nos. 1; 18).

In June 2023, Mr. Williams attempted to file a petition and other documents in the State Courts using the New York State Courts Electronic Filing System ("NYSCEF") without the prepayment of fees. (ECF No. 1 at 72). Daniel, a management analyst in the E-filing Division of the New York State Office of Court Administration ("OCA"), emailed Mr. Williams to inform him that his petition was deleted from the system because a "[p]oor person application cannot be done on NYSCEF." (Id. at 32). Daniel further explained that Mr. Williams needed first to "obtain a court order granting [him] poor person status BEFORE [he was] permitted to file" a petition. (Id. (emphasis in original)).

 **\*2**  About a year later, in June 2024, Mr. Williams attempted to file in the State Courts a second petition, to which he attached his first petition, by sending it to several email addresses, at least one of which appears to connect to an emergency relief docket. (Id. at 15; 72). After several days without acknowledgment of this filing, Mr. Williams filed his second petition on NYSCEF. (Id. at 15–17). Mr. Williams was later notified that his second petition could not be processed. (Id. at 17). After additional administrative back-and-forth regarding his second petition, Hodge, another OCA management analyst, emailed Mr. Williams, informing him that the State Courts "require[ ] for a Poor Person Application to be filed at the court in person ... [p]rior to commencement" of an action without the prepayment of fees. (Id. at 31). "Once the order is signed[,] then you can file the signed order and your comm[e]nceme[n]t [d]ocuments." (Id.) Mr. Williams alleges that he then submitted his documents to the State Courts' pro se office, which did not respond. (Id. at 21–22).

Mr. Williams claims that the emails from Daniel and Hodge, informing him that he was required to receive a signed order before commencing an action in the State Courts without the prepayment of fees, signaled "tacit approvals" of and amounted to denial of his access to the State Courts. (ECF No. 1 at 22).

In the Amended Complaint, Mr. Williams added allegations that, because he was denied access to the State Courts, he should be able to pursue his underlying claims against BSREP in this Court. (ECF No. 18 at 5). To that end, Mr. Williams repeated the allegations he made against BSREP in the State Courts. (See generally ECF No. 18).

The relief Mr. Williams seeks includes: (i) an order compelling Hodge and Daniel to "accept" his "CPLR 1101 Application via electronic means to allow him to proceed in the e-filing" of his second petition in the State Courts; (ii) an order tolling "all deadlines and statutes of limitations that may have expired due to this instant unequal access to the court matter"; and, (iii) damages of $50 million. (ECF No. 1 at 6).

### B. Procedural Background

On June 18, 2024, Mr. Williams filed the Complaint against various unidentified "Doe" defendants. (ECF No. 1). The Honorable Paul A. Engelmayer granted Mr. Williams' request to proceed in forma pauperis and directed the Clerk of Court to: (i) add Hodge and Daniel as defendants in the case, pursuant to Rule 21; (ii) drop all unidentified defendants from the action without prejudice under the same Rule; and (iii) effect service of process on Hodge and Daniel. (ECF No. 9). The Clerk of Court issued the summonses for Hodge and Daniel and mailed an information package to Mr. Williams. (ECF Nos. 10; 11). Judge Engelmayer then granted Mr. Williams' request for permission to utilize electronic case filing in this action and referred the case for general pretrial supervision. (ECF Nos. 15; 16). The United States Marshals Service ("USMS") served Hodge and Daniel with the Complaint and summonses. (ECF Nos. 20; 21). On August 12, 2024, Mr. Williams filed the Amended Complaint. (ECF No. 18).

Although Mr. Williams does not clearly define his claims, we construe his Complaint as asserting three claims: (i) a § 1983 claim based on denial of his right to access the State Courts under the First Amendment (the "Access to Courts Claim"); (ii) a § 1983 claim based on violation of his equal protection rights under the Fourteenth Amendment (the "Equal Protection Claim"); and, (iii) purported criminal claims against Defendants (the "Criminal Claims").

On October 25, 2024, Hodge and Daniel filed the Motion, which Judge Engelmayer referred for a report and recommendation. (ECF Nos. 37; 41). After Hodge and Daniel filed the Motion—and between Mr. Williams' various other lengthy filings and requests for relief—the Court ordered Mr. Williams to file a response to the Motion, granted him several extensions of time to do so, and warned him each time that failure to respond would result in the Court ruling on the Motion based on the Complaint and Defendants' submissions alone. (ECF Nos. 44; 47; 50; 52; 56).

**\*3** On December 30, 2024, Mr. Williams filed a document labeled as his response to the Motion, which does address some of Defendants' arguments (ECF No. 60), so the Court deemed that submission Mr. Williams' opposition to the Motion. (ECF No. 62). Hodge and Daniel then filed a reply. (ECF No. 66). [4]

## III. JURISDICTION AND VENUE

Personal jurisdiction and venue are uncontested. As discussed below, Hodge and Daniel challenge the Court's subject matter jurisdiction over Mr. Williams' claims.

## IV. STANDARDS OF REVIEW

### A. Federal Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). [5] Mr. Williams' Access to Courts and Equal Protection Claims trigger the Court's federal question jurisdiction under 28 U.S.C. § 1331, which grants federal district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." [6] Mr. Williams asserts those claims pursuant to a federal statute, 42 U.S.C. § 1983. (See ECF Nos. 1; 18). Section 1983 provides a vehicle for judicial relief to civil litigants who allege a "person who, under color of any statute, ordinance, regulation, custom, or usage of any State" subjected them to the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

Hodge and Daniel move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that the Eleventh Amendment deprives the Court of subject matter jurisdiction and shields them from suit under the doctrine of sovereign immunity, and under Rule 12(b)(6) on the ground that Mr. Williams fails to state a claim against them. (ECF Nos. 38; 66).

### B. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008). A court may properly refer to matters outside the pleadings when considering the existence of jurisdiction on a Rule 12(b)(1) motion. See Kamen, 791 F.2d at 1010–11.

On a motion to dismiss under Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). A challenge to the legal sufficiency of jurisdiction is "based solely on the allegations of the complaint or the complaint and exhibits attached to it," and thus "plaintiffs have no evidentiary burden, for both parties can be said to rely solely on the facts as alleged in the plaintiffs' pleading." Katz v. Donna Karan Co., LLC, 872 F.3d 114, 119 (2d Cir. 2017). When a defendant makes a factual challenge, however, the defendant can "proffer[ ] evidence beyond the plaintiffs' pleading." Id. (cleaned up). Plaintiffs opposing such a motion must "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on

**Williams v. Does, Not Reported in Fed. Supp. (2025)**

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 45 of 51

the allegations in their pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." Id. (cleaned up).

### C. Rule 12(b)(6)

**\*4** A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if "the facts, taken as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim to relief." Sharikov v. Philips Med. Sys. MR, Inc., 103 F.4th 159, 166 (2d Cir. 2024). Although a district court must accept a plaintiff's "well-pleaded factual allegations" as true, this obligation is "inapplicable to legal conclusions, such as threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007)).

The Court "construe[s] a pro se complaint liberally," Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.' " Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Pro se litigants, however, "remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in Twombly and Iqbal." Brickhouse v. City of N.Y., No. 09 Civ. 9353 (NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010).

Although Mr. Williams responded in some form to the Motion, any failure on his part to oppose particular arguments Defendants make in the Motion does not alone merit dismissal of the Complaint. See Goldberg v. Danaher, 599 F.3d 181, 183–84 (2d Cir. 2010); McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the [C]ourt is capable of determining based on its own reading of the pleading and knowledge of the law. If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Goldberg, 599 F.3d at 184 (citing McCall, 232 F.3d at 322–23).

## V. DISCUSSION

To bring some order to the parties' filings, we first discuss Hodge and Daniel's invocation of Eleventh Amendment immunity followed by their arguments that Mr. Williams fails to state a claim. We will then turn to Mr. Williams' allegations concerning BSREP and whether leave to amend the Complaint is appropriate. Finally, we will discuss Mr. Williams' other pending requests for relief.

### A. Eleventh Amendment Immunity

Mr. Williams argues that he brings his claims "against all in their [ ] available capacities." (ECF No. 60 at 17). We interpret that statement to mean Mr. Williams asserts his claims against Hodge and Daniel in both their official and individual capacities. To the extent Mr. Williams seeks monetary relief against them in their official capacities as employees of the State Courts, Hodge and Daniel argue the Eleventh Amendment shields them from Mr. Williams' request for monetary relief. They are correct.

### 1. Legal Standard

The Eleventh Amendment to the United States Constitution prohibits the "[j]udicial power of the United States" from extending to "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity" or Congress has "abrogate[d] the states' Eleventh Amendment immunity ... pursuant to its authority under Section 5 of the Fourteenth Amendment." Woods v. Rondout Valley Cent. Sch. Dist. Bd. Of Educ., 466 F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment

extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Id. A suit against an individual state official in his or her official capacity "is no different from a suit against the State itself[,]" and is thus barred by the Eleventh Amendment. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

**\*5** "The Eleventh Amendment does not bar all claims against officers of the State, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the state government." Fla. Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982). A suit seeking only prospective injunctive relief against a state official—as opposed to retrospective monetary damages—is permissible notwithstanding the Eleventh Amendment. See Ex parte Young, 209 U.S. 123, 155–56 (1908) (collecting authorities supporting principle that a federal court has equitable jurisdiction to enjoin state officers from engaging in an act that violates the United States Constitution); see also P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (explaining that "Young and its progeny render the [Eleventh] Amendment wholly inapplicable to a certain class of suits"); Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir. 2003) (noting that the "Eleventh Amendment ... does not preclude suits against state officers in their official capacity for prospective injunctive relief to prevent a continuing violation of federal law").

In addition, the Eleventh Amendment does not preclude a suit for monetary damages against state officials in their individual capacities. See Alden v. Maine, 527 U.S. 706, 757 (1999) (explaining that "a suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself, so long as the relief is sought not from the state treasury but from the officer personally"); Hafer v. Melo, 502 U.S. 21, 25–31 (1991) (holding that state officers may be held personally liable for damages for actions in their official capacities).

### 2. Application

Because "New York State has not waived its sovereign immunity[,] [n]or has Congress, through § 1983, abrogated the state's immunity," Johnson v. New York, No. 10 Civ. 9532 (DLC), 2012 WL 335683, at \*1 (S.D.N.Y. Feb. 1, 2012) (citing Santiago v. N.Y. State Dep't of Corr. Servs., 945 F.2d 25, 31 (2d Cir. 1991)), the Eleventh Amendment bars Mr. Williams' claims for monetary relief against Hodge and Daniel in their official capacities. See A.G. v. Green, No. 22 Civ. 6146L, 2023 WL 2573324, at \*1 (W.D.N.Y. Mar. 20, 2023) (dismissing claims that sought only monetary relief against state official in his official capacity); Day v. Gallagher, 151 F. Supp. 3d 253, 255 (D. Conn. 2015) (dismissing claims for money damages against all defendants in their official capacities); Clark v. Tosco Corp., No. Civ. A. 300CV1016JCH, 2000 WL 33116539, at \*2 (D. Conn. Oct. 17, 2000) (same).

Accordingly, the Court lacks subject matter jurisdiction over Mr. Williams' claims to the extent that they seek monetary damages against Hodge and Daniel in their official capacities. [7]

### B. Failure to State a Claim

To the extent that Hodge and Daniel might be subject to liability in their individual capacities, the Complaint, liberally construed, asserts only the Access to Courts and Equal Protection Claims against them. (See § II.B., supra; see generally ECF Nos. 1; 18). Mr. Williams has not, however, plausibly alleged all the elements of those claims. In addition, Mr. Williams' Criminal Claims are frivolous or lack merit. (Id.) Because Mr. Williams fails to state a claim under any theory, we respectfully recommend that the Motion be granted, and that the Complaint be dismissed.

### 1. Access to Courts Claim

**\*6** "In order to establish a violation of the right to access the courts, the plaintiff must demonstrate that the alleged deprivation actually interfered with his access to the courts or prejudiced an existing action. In addition, [a p]laintiff must demonstrate that

Case 5:26-cv-00391-ECC-MJK   Document 5   Filed 03/20/26   Page 47 of 51

Williams v. Does, Not Reported in Fed. Supp. (2025)

an 'actual injury' resulted from the denial of access to the courts." Posr v. Dolan, No. 02 Civ. 659 (LBS), 2003 WL 22203738, at *4 (S.D.N.Y. Sept. 23, 2003). "[I]n order to survive a motion to dismiss, a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." Id.

Nothing in the Complaint plausibly alleges that Hodge and Daniel's conduct was deliberate and malicious. After Mr. Williams attempted to initiate an action in the State Courts without the prepayment of fees, Hodge and Daniel each sent a separate notice to Mr. Williams that informed him that the State Courts required him to seek an order to proceed without the prepayment of fees before commencing his action. (ECF No. 1 at 31; 32). Because Mr. Williams did not initiate an action in the State Courts pursuant to the State Courts' rules and practices, Hodge and Daniel merely informed him of the steps he needed to take. (Id.) No reading of the Complaint, even liberally construed, plausibly shows that Hodge and Daniel's conduct was a deliberate and malicious attempt to deny Mr. Williams access to the State Courts. To the contrary, the only plausible inference from Mr. Williams' allegations is that Hodge and Daniel facilitated his access to the State Courts by explaining the requirements for his filings. Accordingly, we respectfully recommend dismissing Mr. Williams' Access to Courts Claim.

### 2. Equal Protection Claim

Mr. Williams also mentions the Equal Protection Clause of the Fourteenth Amendment as it relates to his alleged denial of access to the State Courts. (ECF No. 1 at 2). "To prove an equal protection violation, claimants must prove purposeful discrimination, directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). Assuming for purposes of the Motion that Mr. Williams plausibly alleged membership in a suspect class, the Complaint does not plausibly allege that Mr. Williams was subjected to purposeful discrimination based on race, income, disability, or any other protected characteristic. New York law requires any person who wishes to initiate an action without the prepayment of fees to first ask the State Courts for permission to do so. See N.Y. C.P.L.R. § 1101. Hodge and Daniel simply informed Mr. Williams of that generally applicable requirement. (ECF No. 1 at 31; 32). A fair reading of the Complaint suggests that Mr. Williams would have been allowed to initiate an action in the State Courts without the prepayment of fees if he had followed the instructions for doing so. Mr. Williams has not plausibly alleged that he suffered purposeful discrimination relating to his alleged denial of access to the courts and, therefore, we respectfully recommend dismissing his Equal Protection Claim. Cf. Todd v. Dulce, No. 13 Civ. 5421 (NGG), 2015 WL 4488455, at *8 (E.D.N.Y. July 22, 2015) (rejecting Fourteenth Amendment access to courts argument in the habeas corpus context where the New York State court denied a pro se plaintiff poor person status to pursue his appeal); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 24 (1973) ("At least where wealth is involved, the Equal Protection Clause does not require absolute equality or precisely equal advantages.").

### 3. Criminal Claims

**\*7** Mr. Williams references thirteen criminal statutes and purports to bring criminal claims against Hodge and Daniel for violating those statutes.[8] Hodge and Daniel argue that because Mr. Williams' claims alleging violations of those criminal statutes are "based on an indisputably meritless legal theory," they should be dismissed as frivolous. (ECF Nos. 38 at 16–18; 66 at 10). Specifically, they contend that Mr. Williams: (i) improperly directed his claims against them; (ii) lacks a private right of action; and (iii) failed to plead his claims with particularity. (ECF No. 66 at 10).

The Court is required to dismiss claims that are frivolous or malicious. See 28 U.S.C. § 1915(e)(2)(B)(i). A claim is "frivolous" when either: (1) "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy;" or (2) "the claim is 'based on an indisputably meritless legal theory.' " Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998); Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). "A claim is based on an 'indisputably meritless legal theory' when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." Livingston, 141 F.3d at 437.

Case 5:26-cv-00391-ECC-MJK   Document 5   Filed 03/20/26   Page 48 of 51

Williams v. Does, Not Reported in Fed. Supp. (2025)

Mr. Williams' purported criminal claims against Hodge and Daniel both lack an arguable basis in law and raise dispositive defenses. Four of the criminal statutes Mr. Williams identifies—42 U.S.C. § 3631, N.Y. Real Prop. Acts. Law § 768, N.Y. Penal L. § 20.20, N.Y.C. Admin. Code § 26-523—relate to violations of Mr. Williams' housing rights or apply only to corporations. They are facially inapplicable to Hodge and Daniel. As to the two perjury statutes, N.Y. C.P.L.R. § 2106 and N.Y. Penal L. § 210, Hodge and Daniel are correct that "[i]n New York, there is no civil action for perjury." Campaign v. Esterhay, 61 Misc. 3d 662, 667 (N.Y. Sup. Ct. 2018) (citing Verplanck v. Van Buren, 76 N.Y. 247, 261 (1879)).

Moreover, and as to the remaining criminal statutes Mr. Williams cites, "[i]t is well-settled that, unless specifically provided for, federal criminal statutes rarely create private rights of action." Daniel v. Safir, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001) (citing Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979)). Mr. Williams lacks such private rights of action here. See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir. 1994) (discussing 18 U.S.C. § 242); Keady v. Nike, Inc., 116 F. Supp. 2d 428, 435 (S.D.N.Y. 2000) (discussing 18 U.S.C. § 241); Greenblatt v. Richard Potasky Jewelers, No. 93 Civ. 3652 (LMM), 1994 WL 9754, at *4 n.4 (S.D.N.Y. Jan. 13, 1994) (discussing 18 U.S.C. § 371); Zietek v. Pinnacle Nursing and Rehab Center, No. 21 Civ. 5488, 2024 WL 243436 (AT) (JLC), at *2, n.4 (S.D.N.Y. Jan. 23, 2024) (discussing 18 U.S.C. §§ 1701 and 1702). Mr. Williams merely references the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, but he has not plausibly advanced a RICO claim by alleging with particularity that he was "injured in his business or property by reason of a RICO violation[,]" Alix v. McKinsey & Co., Inc., 23 F.4th 196, 200 (2d Cir. 2022), so—to the extent he is able to and did attempt to assert a RICO claim—it also fails. [9]

**\*8**  Accordingly, we respectfully recommend dismissing the Criminal Claims.


### C. Qualified Immunity

Hodge and Daniel argue that they are shielded from Mr. Williams' claims by qualified immunity. (ECF No. 38 at 14–15). Having determined that Mr. Williams has failed to state any plausible claim, however, we need not address the more difficult question of whether qualified immunity applies here. See Porath v. City of N.Y., No. 22 Civ. 1302 (JPC) (SLC), 2023 WL 9197680, at *14 (S.D.N.Y. Dec. 21, 2023), adopted by, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024); Steele-Warrick v. Microgenics Corp., No. 19 Civ. 6558 (FB) (VMS), 2023 WL 3081290, at *11 (E.D.N.Y. Apr. 26, 2023) (declining to address qualified immunity argument with respect to claims that were not plausibly alleged); DeMeo v. Koenigsmann, No. 11 Civ. 7099 (HBP), 2015 WL 1283660, at *18 (S.D.N.Y. Mar. 20, 2015) ("Because plaintiff has failed to state claims on which relief can be granted against Dr. Holder, I need not address the defendants' argument that he is entitled to qualified immunity.").


### D. BSREP

Mr. Williams seeks "removal" to this Court of the claims he purportedly made against BSREP in the State Courts, where he lodged a litany of allegations against BSREP concerning housing conditions. (ECF No. 18 at 3–23, 28). BSREP has not been served and has not appeared in this action. Mr. Williams does not claim, however, that BSREP denied him access to the State Courts; rather, he contends that because Hodge and Daniel allegedly denied him access to the State Courts, his underlying claims against BSREP should be heard here. We disagree.

"At any time, on just terms," the Court, on its own motion, may "add or drop a party." Fed. R. Civ. P. 21. "A court has broad discretion in determining whether to add or drop parties, ... which is guided by principles of fundamental fairness and judicial efficiency." BBK Tobacco & Foods, LLP v. 7th St. Vill. Farm Inc., No. 17 Civ. 4079 (GHW), 2017 WL 8723938, at *1 (S.D.N.Y. June 15, 2017); Williams v. Does, No. 24 Civ. 4794 (PAE), 2024 WL 3723052, at *1 (S.D.N.Y. July 16, 2024); (ECF No. 9). When evaluating motions brought under Rule 21, courts have considered "(1) whether severance would serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." See Golden Goose Deluxe Brand v. Aierbushe, No. 19 Civ. 2518 (VEC), 2019 WL 2162715, at *2 (S.D.N.Y. May 16, 2019) (citing Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008)); see also In re Merrill

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 49 of 51

Williams v. Does, Not Reported in Fed. Supp. (2025)

*Lynch & Co., Inc. Research Reports Secs. Litig.,* 214 F.R.D. 152, 154–55 (S.D.N.Y. 2003). Hodge and Daniel were added to this action pursuant to Rule 21 (ECF No. 9 at 2–3), and we recommend dismissing BSREP as a party pursuant to the same rule.

To the extent that any of the claims against Hodge and Daniel were to continue, dismissing BSREP from this case would be in the interest of judicial economy. First, Mr. Williams' allegations against BSREP concerning housing violations do not arise out of the same transaction or occurrence as his claims against Hodge and Daniel. The Complaint is focused entirely on Mr. Williams' claim that the State Courts' requirement for litigants to make an application to proceed without the prepayment of fees before commencing an action amounted to the denial of his right of access. (ECF No. 1 at 5–6). The Complaint merely reasons that because Mr. Williams was allegedly unable to commence an action against BSREP in the State Courts he can bring that action here instead.

**\*9** Second, Mr. Williams has not plausibly alleged this Court's subject matter jurisdiction over his claims against BSREP. More specifically, Mr. Williams has not plausibly alleged that BSREP is a state actor that deprived him of his rights under the Constitution or any statute, and the Complaint lacks allegations sufficient to state any other plausible claim against BSREP under this Court's federal question or diversity jurisdiction.

We therefore respectfully recommend that, if the claims against Hodge and Daniel were to continue, BSREP be dismissed from this action pursuant to Rule 21. Cf. *McGee v. State Farm Mut. Auto. Ins. Co.,* 684 F. Supp. 2d 258, 262 (E.D.N.Y. 2009) (sua sponte exercising discretion under Rule 21 to dismiss parties).

### E. Leave to Amend

Mr. Williams has not requested leave to amend and we respectfully submit that no such leave is warranted.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir. 1991); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.,* 758 F.3d 493, 505 (2d Cir. 2014). "Although district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings, leave to amend need not be granted when amendment would be futile." *Terry v. Inc. Vill. of Patchogue,* 826 F.3d 631, 633 (2d Cir. 2016). "Where it appears that granting leave to amend is unlikely to be productive ... it is not an abuse of discretion to deny leave to amend." *Apotex Inc. v. Acorda Therapeutics, Inc.,* 823 F.3d 51, 62 (2d Cir. 2016) (quoting *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993)).

Mr. Williams made two attempts at pleading viable claims and received the benefit of the Court considering them together as a single Complaint. Mr. Williams also submitted a lengthy response to the Motion. (ECF No. 60). In the hundreds of pages that comprise the Complaint and his opposition, liberally construed, Mr. Williams was not able to allege a single plausible claim and there is no indication he could do so if given the opportunity to replead. Leave to amend would be futile and is therefore not warranted. See *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here [a] plaintiff is unable to demonstrate he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

### F. Mr. Williams' Other Pending Requests

Mr. Williams filed numerous other requests for relief both before and after Hodge and Daniel filed the Motion. They include, among others: a request for the USMS to serve 106 people and entities (ECF Nos. 24; 26); a temporary restraining order and preliminary injunction enjoining Defendants from (i) "remanding [this] case to state court[,]" and withholding state court records and an induction stove from his home, (ii) ordering "access to [a] judge to sign [Mr. Williams'] criminal complaints" against Defendants, and (iii) consolidating this case with another of Mr. Williams' cases (ECF Nos. 29; 31); a response to Mr. Williams' purported order to show cause why he has not immediately received his requested relief (id.); an order of protection and to show cause based on Mr. Williams' allegations concerning "Project 2025" and several other groups and federal offices (ECF Nos. 33; 43); an application for pro bono counsel (ECF No. 46), which the Court held in abeyance pending a decision

**Williams v. Does, Not Reported in Fed. Supp. (2025)**

Case 5:26-cv-00391-ECC-MJK   Document 5   Filed 03/20/26   Page 50 of 51

on the Motion (ECF No. 47); a motion for reconsideration under Federal Rule of Civil Procedure 60, "seeking correction of clerical mistakes, relief from dismissal based on inadvertence or neglect, and addressing misconduct by opposing parties in the handling of the CVRA case" (ECF No. 58; see also ECF Nos. 54; 55); and additional requests to proceed in forma pauperis in this Court and on appeal (ECF Nos. 63–65).

**\*10**  If the Court dismisses the Complaint, we respectfully recommend denying all other of Mr. Williams' pending requests as moot in light of the Court's decision on the Motion.

## VI. CONCLUSION

Accordingly, we respectfully recommend that: (i) the Motion (ECF No. 37) be **GRANTED**; (ii) Defendant BSREP UA 3333 Broadway LLC be **DISMISSED** pursuant to Federal Rule of Civil Procedure 21; (iii) the Complaint (ECF Nos. 1; 18) be **DISMISSED WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**; and (iv) that all other of Mr. Williams' pending requests be **DENIED as moot**.

\* \* \*

### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**All Citations**

Not Reported in Fed. Supp., 2025 WL 713295

---

**Footnotes**

1       Defendants contend the Amended Complaint alone is the operative pleading under Federal Rule of Civil Procedure 15(d) (ECF No. 66 at 2), while Mr. Williams argues he intended to supplement not replace the Complaint with the Amended Complaint (ECF No. 60 at 2). In deference to Mr. Williams' pro se status, we consider the allegations of the Complaint and Amended Complaint together. See Briggs v. SCO Family of Servs., No. 16 Civ. 3882 (JFB) (SIL), 2019 WL 2359421, at \*1 (E.D.N.Y. Feb. 13, 2019), adopted by, 2019 WL 1253220 (E.D.N.Y. March 18, 2019).

2       It is unclear, but also immaterial, who initiated the first proceeding and in which New York State court. For simplicity, we define the New York State courts collectively.

Williams v. Does, Not Reported in Fed. Supp. (2025)

Case 5:26-cv-00391-ECC-MJK    Document 5    Filed 03/20/26    Page 51 of 51

3　Record citations are to the ECF page numbers and not the paragraph numbers, which are non-consecutive.

4　Mr. Williams filed a request to file a sur-reply. (ECF No. 67). The Court reviewed Mr. Williams' filing and finds that it does not advance any different or additional arguments in opposition to the Motion.

5　Internal citations and quotation marks are omitted from case citations, and alterations are adopted throughout unless otherwise indicated.

6　As discussed below (see § V.B.3., infra), Mr. Williams' references to criminal statutes are improper in this civil action.

7　Although the Eleventh Amendment does not preclude the Court from exercising subject matter jurisdiction over claims against Defendants in their individual capacities and where Mr. Williams seeks equitable relief against them in their official capacities (see § V.A.1., supra), for the reasons set forth in the remainder of this Report and Recommendation, Mr. Williams has not plausibly alleged any such claims. (See § V.B., infra).

8　The referenced criminal statutes include:

- 18 U.S.C. § 241 (Conspiracy Against Rights)

- 18 U.S.C. § 371 (Conspiracy to Defraud the United States)

- 18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)

- 18 U.S.C. § 1961 (Racketeering)

- 18 U.S.C. § 1701 (Obstruction of mails)

- 18 U.S.C. § 1702 (Obstruction of correspondence)

- 42 U.S.C. § 3631 (Criminal Interference with Right to Fair Housing)

- 42 U.S.C. § 7413(c) (Criminal Provisions of the Clean Air Act)

- N.Y. Real Prop. Acts. Law § 768 (Unlawful Eviction)

- N.Y. Penal L. § 210 (Perjury)

- N.Y. Penal L. § 20.20 (Criminal Liability of Corporations)

- N.Y. C.P.L.R. § 2106 (Perjury)

- New York City, N.Y., Code § 26-523 (Criminal Penalties for Unlawful Eviction)

9　To the extent Mr. Williams identified other statutes in his initial form complaint, he has not pursued them further in his subsequent filings. (See ECF No. 1 at 2). The Court thus deems any alternative claims abandoned. See Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 122 (S.D.N.Y. 2023).

---

**End of Document**　　　　　　　　　　　　© 2026 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW　© 2026 Thomson Reuters. No claim to original U.S. Government Works.　10